UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 13-69 (MJD/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROGER MARTIN PEDLEY, )<br>)<br>Defendant. ) | **DEFENDANT ROGER PEDLEY'S**<br>**SENTENCING POSITION PAPER** |

Defendant Roger Martin Pedley, by and through undersigned counsel, respectfully tenders this Sentencing Position Paper.

## I. INTRODUCTION

Roger Pedley comes before this Court for sentencing as the result of his guilty plea to Counts 7-10 of the Indictment involving income tax evasion. Mr. Pedley respectfully requests that the Court depart from the advisory guidelines and impose a sentence of 6-12 months of community confinement and three years of probation. This sentence would comply with the Court's mandate to impose " a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. Section 3553(a)(2)(2012).

## II. SENTENCING UNDER 18 U.S.C. § 3553(a)

The Court's sentencing in Mr. Pedley' s case is guided and governed by 18 U.S.C. § 3553. *See Gall v. United States*, 552 U.S. 38, 46 (2007) (clarifying that 18 U.S.C. § 3553(a) is the controlling law of sentencing, and the Sentencing Guidelines are merely advisory). Section 3553(a) directs that the Court should impose a sentence that is sufficient, but not greater than necessary, to comply with the following purposes set forth in paragraph 2 of that section:

(A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with the needed correctional treatment.

Section 3553(a) also sets forth several criteria the Court "shall consider" in determining the appropriate sentence: (1) the nature of the offense and the history and characteristics of the defendant; (2) the purposes of sentencing; (3) the kinds of sentences available (i.e. alternatives to prison); (4-5) the Sentencing Guidelines and their Policy Statements (which are advisory); (6) avoiding disparity in treatment of similar offenders; and (7) the need to provide restitution. In short, the Court must "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gall*, 552 U.S. at 46. *Gall* indicates that even factors disfavored by the Sentencing Commission may be relied on by the district court in fashioning an appropriate sentence. *Id.*

A review of the relevant factors in this case strongly supports a sentence well below the recommended guideline range for Mr. Pedley.

**A.    Guideline Computation**

In the present case, Mr. Pedley's guideline range is determined by § 2T1.1 of the Sentencing Guidelines. Pursuant to § 2T4.1(H), Mr. Pedley has a base offense level of 20. Per the parties' plea agreement, the Government agrees to recommend a three-level reduction for acceptance of responsibility. USSG § 3C1.1. This recommendation comes notwithstanding the Government's position that a Chapter 3 two-level enhancement is warranted for obstruction because Mr. Pedley made false statements to a federal agent during the investigation of this case.

The Government acknowledges, and US Probation agrees, that this case is extraordinary. *See* Pre-sentence Report at §§ 3-4.

Application Note 4 to § 3E1.1 provides: "Conduct resulting in an enhancement under § 3C1.1 ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. *There may, however, be extraordinary cases in which an adjustment under both §§ 3C1.1 and 3E1.1 may apply.*" To determine whether a case is "extraordinary," the district court should take into account the totality of the circumstances, including whether the obstruction of justice conduct was an isolated incident early in the investigation and whether the defendant denied the obstruction of justice at sentencing. *United States v. Honken*, 184 F.3d 961, 968 (8th Cir. 1999). *See also United States v. Lamere*, 980 F.2d 506, 510 n.2 (1992) (trial court granted downward departure despite adding obstruction-of-justice points to the sentence. While the issue was not raised on appeal, appellate court assumed the trial court determined it was an exceptional case warranting the departure and noted that the government, as well as US probation, agreed the downward departure was warranted).

Here, Mr. Pedley's statements to the IRS agent occurred at the very beginning of the criminal investigation and over three years before the Government charged him with a crime. Moreover, Mr. Pedley does not challenge the obstruction enhancement. The Government and US Probation both agree that a departure is warranted. Mr. Pedley should therefore be eligible for a three level decrease adjustment for his acceptance of responsibility under §§ 3E1.1(a) and (b), which results in an adjusted base offense level of 19. Mr. Pedley has no criminal history, so his criminal history category is I.[1] Combining Mr. Pedley's offense level of 19 with his criminal

---

[1] The Court should be aware that Mr. Pedley's criminal history score is a "true" zero, meaning that there are no prior offenses whatsoever.

history category of I yields an advisory guideline sentencing range of thirty to thirty-seven months imprisonment.

B.  **Effect of Plea Agreement**

Mr. Pedley's guilty plea was entered on August 12, 2013, pursuant to a plea agreement with the government. In exchange for Mr. Pedley's guilty plea, the government agreed to dismiss the remaining charges and recommend a three-level decrease for acceptance of responsibility.

C.  **A Sentence of Six to Twelve Months Community Confinement and Probation is Sufficient But Not Greater Than Necessary to Achieve the Purposes of 18 U.S.C. § 3553(a).**

The touchstone of sentencing in the federal system is that the Court should impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a). Careful review of those factors, as set forth below, compels the conclusion that a sentence not greater than twelve-month's community confinement and probation would be more than necessary to achieve the statutory objectives of sentencing.

III.  **RELEVANT SECTION 3553(a) FACTORS**

A.  **Nature and Circumstances of the Offense.**

The facts of this case are outside the heartland of similar tax cases and therefore a below-guidelines sentence is warranted. *See United States v. Martinez-Barragan*, 545 F.3d 894, 901 (10th Cir. 2008) ("As part of the sentencing process, a district court may consider whether the case before it lies within the 'heartland' of typical cases considered by the Sentencing Commission when it drafted the Guidelines.").

The conduct at issue involves Mr. Pedley's failure to declare significant amounts of cash as income on his federal personal income tax returns that he filed jointly with his wife for 2006,

2007, 2008 and 2009. The undeclared cash came from the Pine Ridge Golf Course that he owned and operated in Motley, Minnesota, and from earlier business ventures involving the sale of a bowling alley, furniture, coins and used cars. On approximately 114 occasions between May 2006 and June 2009 Mr. Pedley deposited sums of cash in amounts less than $10,000 at various banks in the Motley area. Most of the deposits were in the amount of $9,900. At no time did bank employees (tellers) question this practice. Mr. Pedley should have known better and will apologize to the Court for his under reporting of cash income at the time of his sentencing. He assumes full responsibility for his actions.

**B.    History and Characteristics of the Defendant.**

After *Gall* and its companion cases, there are few limits on the information that the Court may receive and consider concerning the background, character, and conduct of a defendant for purposes of imposing an appropriate sentence. Mr. Pedley's personal characteristics, including his penchant for hard work, increasingly poor physical health, and advanced age merit a non-guidelines sentence in this case.

**1.    Mr. Pedley Exemplary Work History.**

Mr. Pedley has been self-employed for most of his adult life. In July 2013, he sold the Pine Ridge Golf Club, which he had owned and operated with his wife since the mid-1990s. Mr. Pedley has been constantly employed since he began working during his teenage years. He first worked on the family farm. After a stint at RC Cola Company, Mr. Pedley went on to own and operate several businesses, including a beer distributorship, a bar and a bowling alley. *See* Pre-Sentence Report at §§ 56-59. Until the sale of the Pine Ridge Golf Club this past summer, it was not unusual for Mr. Pedley and his wife to work twelve hour plus days between May and October each year. He has always worked long hours since his teenage years. The recent sale of

the Pine Ridge golf course brings to an end a remarkable 40 years of continuance self-employment.

### 2.   Mr. Pedley's Poor Physical Health.

A defendant's unusually poor health may be grounds for a downward departure or downward variance. *See, e.g., United States v. Bordeaux*, 674 F.3d 1006, 1009 (8th Cir. 2012) (explaining that terminal cancer "is the type of 'extraordinary physical impairment' for which the sentencing Guidelines allow a downward departure") (citing U.S.S.G. § 5H1.4); *United States v. McFarlin*, 535 F.3d 808 (8th Cir. 2008) (imposing 3 years of probation rather than the 60-month guideline term, based on 54 year old's serious health problems, including anxiety, depression, nervous disorders and heart disease, and significantly reduced life expectancy); *United States v. Spigner*, 416 F.3d 708, 712-13 (8th Cir. 2005) (explaining that although defendant, who sold more than 50 grams of crack, had agreed not to ask for downward departures based on health, case was remanded because district court could still impose a sentence lower than the suggested range and § 3553(a)(2)(D) required court to consider the need to provide medical care in the most effective manner).

Mr. Pedley's physical health is not good. He has a history of health concerns which have been more prevalent since he turned 60 a decade ago. He has been treated for hypertension (controlled), Type 2 diabetes, coronary artery disease, unstable angina, hyperlipidemia, peripheral vascular disease, actinic keratosis (precancerous skin patches), plantar fasciitis in the right foot, sleep apnea, and benign prostatic hyperplasia (enlargement of prostrate). His medical treatment has involved coronary angioplasty with heart stents. He has undergone three separate coronary artery bypass grafting surgeries. During the past year Mr. Pedley has undergone knee surgery and treatment for skin cancer lesions in St. Cloud, Minnesota. See Final Pre-Sentence

Report at §§ 48-50. Because Mr. Pedley's health problems make him less likely to re-offend, and because the physical stress of incarceration may aggravate those conditions, this factor supports a downward variance.

### 3. Mr. Pedley's Advanced Age.

Mr. Pedley is 70 years old. His advanced age supports a below-guidelines sentence because a heartland sentence would be greater than necessary to meet the sentencing purposes of retribution, deterrence and rehabilitation. The Sentencing Commission has recognized that "[r]ecidivism rates decline relatively consistently as age increases." USSC Report, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12, 28 (2004); *see also* U.S.S.G. § 5H1.1 (as amended effective Nov. 1, 2010) (Policy Statement) ("Age … may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.").

Further, since *United States v. Booker* was decided, federal courts "are not only permitted, but required, to consider 'the history and characteristics of the defendant.' 18 U.S.C. 3553(a) (1). This mandate includes consideration of a defendant's age and medical condition." *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007) (affirms district court's downward variance based, in part, on defendant's age); *United States v. Ryder*, 414 F.3d 908 (8th Cir. 2005)(remands to district court to consider defendant's age and health in light of *Booker*).

It is significant not just that Mr. Pedley is seventy years old, but also that he was never previously convicted of any crime. This "true" criminal history score of zero resulted in Mr. Pedley being placed in criminal history category (CHC) I, but placement in CHC I does "not distinguish between a nineteen year old and a sixty year old, both of whom have led crime-free

lives...." *United States v. Ward*, 814 F. Supp. 23, 24 (E.D. Va. 1993); *see also Huckins*, 529 F.3d at 1317 (10th Cir. 2008) ("...a district court may weigh a defendant's lack of a criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553(a) analysis").

Given Mr. Pedley's work history, advanced age and health issues, a six to twelve month sentence of community confinement is more than sufficient to support the goals of the federal sentencing guidelines.

### C.   The Purposes of Sentencing: Retribution; Deterrence; and Rehabilitation.

Even if Mr. Pedley needs rehabilitation, imprisonment is not an appropriate means of promoting it. 18 U.S.C. § 3582(a) (2012). Moreover, a lengthy prison sentence is not needed to protect society from Mr. Pedley re-offending and will not likely deter others from committing similar tax offenses. As noted above, Mr. Pedley has been an otherwise law-biding, seventy year old citizen.

For a businessman who lives and works in a small community, embarrassment from local media publicity is perhaps the toughest consequence of a felony conviction. The Government is correct that the tax laws are important. Mr. Pedley's guilty plea and the media publicity surrounding it sufficiently reinforce that message without requiring a thirty to thirty-seven month prison sentence.

Finally, it should also be noted that as part of his plea agreement Mr. Pedley has agreed to pay any outstanding taxes, including appropriate penalties and interest. According to the Government and Pre-Sentence Report the total federal taxes owing for underreported income

between 2005 and 2009 is $489,623.[2] *See* Pre-Sentence Report at § 10. Expected penalties and interest will likely bring the total figure closer to $1 million. Mr. Pedley's net worth is not insignificant, but will be reduced considerably after paying expected taxes and penalties. If it were not for the recent sale of the Pine Ridge Golf Course the Pedley's would have very few assets remaining to live on during retirement.

## CONCLUSION

Based upon an examination of all relevant factors, the sentence recommended by the Guidelines – thirty to thirty-seven months of confinement – is greater than necessary to comply with the sentencing purposes outlined in § 3553(a). Instead, a sentence of six to twelve months community confinement in the Motley, Minnesota area is appropriate, given the unique nature of the offense and the exemplary life Mr. Pedley has lead outside the conduct admitted here.

Dated: January 2, 2014

s/ Richard H. Kyle Jr.
Richard H. Kyle Jr. (#207676)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: (612) 492-7333
**ATTORNEYS FOR DEFENDANT
ROGER PEDLEY**

33624608_1.DOCX

---

[2] The unreported income listed in the table varies slightly from defense counsel's own calculations. Counsel can't reconcile the minor differences but there is no dispute that the tax owing is greater than $400,000.